IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BREOADE V., | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:25-CV-254-X-BK |
| | § | |
| COMMISSIONER, SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
| DEFENDANT. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Doc. 8, Plaintiff's appeal of the

denial of Plaintiff's application for Social Security disability benefits, Doc. 1, is before the

undersigned United States magistrate judge for findings and a recommended disposition.  For the

reasons outlined here, the Commissioner's decision should be **REVERSED** and **REMANDED**

for further proceedings.

## I. BACKGROUND

### A. Procedural History

Plaintiff seeks judicial review of the Commissioner of the Social Security

Administration's ("Commissioner") final decision denying his application for disability

insurance benefits ("DIB") under the Social Security Act (the "Act").  Doc. 1.

In September 2021, Plaintiff filed for DIB, claiming that he had been disabled since

March 2020.  Doc. 15 at 3.  Following the agency's initial denial of Plaintiff's application, in

2023, the ALJ issued an adverse decision finding Plaintiff not disabled.  Doc. 12-1 at 121-38.

On further review, however, the Appeals Council vacated and remanded the case for further

administrative proceedings, concluding that the ALJ's decision did "not contain an adequate evaluation of whether [Plaintiff] require[d] a walker." Doc. 12-1 at 145-46.

Following a second administrative hearing on July 15, 2024, the ALJ once again issued an adverse decision, which was later affirmed by the Appeals Council. Doc. 12-1 at 6-12, 20-33, 124-38. Plaintiff now appeals to this Court under 42 U.S.C. § 405(g). Doc. 1.

### B. Factual History

Plaintiff was 27 years old at the alleged onset of his disability and had a high school education. Doc. 15 at 4; Doc. 12-1 at 355. Plaintiff's past relevant work included a job as an airline security representative. Doc. 15 at 4; Doc. 12-1 at 100. Plaintiff claimed he suffered from, *inter alia*, gout, diabetes, swollen extremities, sleep apnea, obesity, and back pain. Doc. 12-1, *passim*.

### C. Medical Opinion Evidence

In 2021, Plaintiff was evaluated by Dr. Paul Worrell, D.O. Doc. 12-2 at 4. Plaintiff was diagnosed with gout and obesity, among other ailments, and prescribed Diflucan, Losartan, Hydrochlorothiazide, Singular, and Gabapentin. Doc. 12-2 at 6. In 2021, Plaintiff was also evaluated by Dr. Atul Singhal, M.D., at the SW Arthritis Group. Doc. 12-1 at 459. Plaintiff's bilateral ankles were both observed to be tender and swollen. Doc. 12-1 at 461. For his gout, Plaintiff received an injection of Triamcinolon Acetonid and was provided with a prescription for an increased dosage of Allopurinol. Doc. 12-1 at 461.

In 2022, Plaintiff was evaluated by Dr. David Ukoha, M.D., a state agency medical consultant. Doc. 12-2 at 124. X-rays revealed no abnormalities, but on observation, Plaintiff's gait, aided by use of a walker, was noted as very slow. Doc. 12-2 at 127-28. Plaintiff's

2

coordination and muscle tone were normal, but Plaintiff had difficulty squatting, hopping, and tandem and toe walking, and his spinous process was non-tender, with no paramuscle spasms. Doc. 12-2 at 127-28. A decreased range of motion was noted in Plaintiff's lumbar spine, and straight-leg-raise testing was negative. Doc. 12-2 at 127-28. Based on his evaluation, Dr. Ukoha diagnosed Plaintiff with type 2 diabetes, chronic non-specified low back pain, obesity, and a history of gouty arthritis. Doc. 12-2 at 127.

During a May 2022 visit to Parkland Health, it was noted that Plaintiff used a cane and walker. Doc. 12-2 at 310. At a follow-up appointment a few months later, Plaintiff was seen by Dr. Kinnari Ruikar, M.D., at Parkland, after reportedly falling while using a rolling walker. Doc. 12-3 at 89. Later, in December 2023, a treatment report completed by Dr. Jhee Un Lee, M.D., at Parkland indicated that a bariatric walker had been ordered for Plaintiff, based on the recommendation of a physical therapist. Doc. 12-3 at 274.

### D. Plaintiff's Testimony

At the 2023 administrative hearing, Plaintiff testified that he experienced numerous symptoms that interfered with his ability to work, including: obesity, gout, osteoarthritis, and depressive moods. Doc. 12-1 at 64-86. Plaintiff testified that he is seen in the hospital emergency room six or seven times a year for gout and diabetes complications. Doc. 12-1 at 70. Plaintiff further testified that he spends most of his days lying around and watching TV and that he must urinate in a bucket or crawl to the bathroom because he cannot stand up for long. Doc. 12-1 at 71. Plaintiff also testified that he was prescribed a walker by Medical City Hospital in 2021, which he uses to walk around his apartment. Doc. 12-1 at 72-73.

At the 2024 administrative hearing, following remand, Plaintiff testified that his obesity, gout, osteoarthritis, and depressive moods interfered with his ability to work. Doc. 12-1 at 89-101. Plaintiff stated that his gout affected both ankles and feet, but that since the last hearing, he had begun taking his medication as prescribed, which somewhat controlled his "gout flare ups." Doc. 12-1 at 91-92. He indicated his last gout flare up occurred about three months before the hearing and explained that when they occurred, they lasted about two weeks on average. Doc. 12-1 at 91-92.

Plaintiff testified that he used a cane at home and the bariatric walker when he left the house. Doc. 12-1 at 93. Plaintiff further testified that he began using a bariatric walker and a cane in 2023, as directed by his physical therapy provider. Doc. 12-1 at 93-94. Plaintiff also noted that he was being treated for severe and frequent leg swelling. As for his activities of daily living, Plaintiff testified that his obesity, back pain, and burning feet caused him to be unable to prepare meals for himself or wash dishes, shower without assistance, or go anywhere except doctor appointments. Doc. 12-1 at 97-98.

**E. The ALJ's Findings**

Following the initial administrative hearing, the ALJ issued his Hearing Decision utilizing the five-step sequential evaluation set forth in 20 C.F.R. § 416.920 in determining whether Plaintiff was disabled. At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2025, and had not engaged in substantial gainful activity since January 1, 2021. At step two, the ALJ determined that Plaintiff had the severe impairments of diabetes mellitus, neuropathy, gouty arthritis, degenerative joint disease of the bilateral feet, and obesity, and the non-severe impairments of sleep apnea, low

back pain, asthma, psoriatic arthritis, hyperlipidemia, and depression.  Doc. 12-1 at 126, 129.

However, the ALJ further found that none of Plaintiff's impairments, singularly or in

combination, met or medically equaled any listed impairment.

At step three, the ALJ further found that Plaintiff had the Residual Functional Capacity

(RFC) to

> perform sedentary work as defined in 20 CFR 404.1567(a) except[1] lift, carry, push,
> and/or pull twenty pounds occasionally and ten pounds frequently; sit for six hours
> and stand and walk for two hours in an eight-hour day; occasionally climb ramps
> and stairs; never climb ladders, ropes, or scaffolds; occasionally balance and stoop;
> and never kneel, crouch, or crawl.

Doc. 12-1 at 133.  Based on the testimony of the Vocational Expert, the ALJ found at step four

that Plaintiff did not have the RFC to perform his past work.  Doc. 12-1 at 136.  However, at step

five, the ALJ found that there were a significant number of jobs in the national economy that

Plaintiff could perform.  Doc. 12-1 at 137.  The ALJ thus concluded that Plaintiff was not

disabled under the Act.  Doc. 12-1 at 138.

In his post-remand decision, the ALJ found at step one that Plaintiff met the insured

status requirements of the Act and had not engaged in substantial gainful activity since March

10, 2020.  Doc. 12-1 at 22.  At step two, the ALJ found that Plaintiff suffered from the severe

impairments of (1) diabetes mellitus (2) neuropathy (3) gouty arthritis (4) degenerative joint

disease of the bilateral feet, and (5) obesity, and that his non-severe impairments included

asthma, hyperlipidemia, and psoriatic arthritis.  Doc. 12-1 at 22, 26.  At step three, however, the

---

[1] It's not clear whether the ALJ intended to exclude the limitations that followed the word
"except" from the RFC, but a plain reading of the sentence indicates so.

ALJ found that none of Plaintiff's impairments, singularly or in combination, met an impairment listed in the applicable regulations. Doc. 12-1 at 22-24.

The ALJ further found that Plaintiff had the RFC to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently with specific limitations:

> He can stand and/or walk for a combined total of 2 hours in an 8-hour workday. He can sit for about 6 hours in an 8-hour workday. He cannot climb ladders, ropes, or scaffolds, kneel, crouch, or crawl. He can occasionally climb ramps and stairs, balance, and stoop. He can understand, remember, and carry out simple tasks. He can interact appropriately with co-workers, supervisors, and the general public. He [is] able to respond appropriately to changes in a routine work setting.

Doc. 12-1 at 27. At step four, the ALJ found that Plaintiff did not have the RFC to perform his past work. Doc. 12-1 at 31-32. The ALJ based this finding in part on the vocational expert's opinion that the demands of Plaintiff's past work exceeded his RFC. Doc. 12-1 at 31. But at step five, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform. Doc. 12-1 at 32-33. The ALJ thus concluded that Plaintiff was not disabled under the Act. Doc. 12-1 at 33.

## II. APPLICABLE LAW

The definition of disability under the Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner utilizes a sequential five-step inquiry: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are "severe"; (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations; (4) whether the claimant can still do his past relevant work; and (5) whether

the impairment prevents the claimant from doing any other available work. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)(4)).  The claimant bears the burden on the first four steps. *Id.* (citation omitted).  If the claimant meets his burden, the burden then shifts to the Commissioner to "prove the claimant's employability." *Id.* (citation omitted).

The Court's review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal citations and quotation marks omitted).  The Court can neither "reweigh the evidence or substitute its judgment for the Commissioner's." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  A finding that substantial evidence does not exist "is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (cleaned up).

The RFC assessment is based on "all of the relevant evidence in the case record," including, but not limited to, medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. SSR 96-8p, 1996 WL 374184 (July 2, 1996).  The ALJ as factfinder has the sole responsibility for weighing the evidence and determining the relative weight to be given it. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).

## III. ANALYSIS

### A. Applicable Standards

Plaintiff argues that the ALJ erred in finding that his use of a walker was not medically necessary. Doc. 15 at 17-32. Upon review, the Court finds that Plaintiff's arguments have merit.

"The Social Security regulations recognize that hand-held assistive devices can impact a claimant's 'functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling.'" *Duenes v. Kijakazi*, 578 F. Supp. 3d 859, 871 (S.D. Tex. 2022) (Stacy, J.) (citing 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(J)(4)). However, an ALJ need not consider a hand-held assistive device such as a walker in the RFC determination unless the device is medically necessary. *Duenes*, 578 F. Supp. 3d at 871.

To find that a hand-held assistive device, like a walker, is medically necessary, the record must contain "medical documentation establishing the need for a hand-held device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96–9p, 1996 WL 374185, at *7.

As a judge of this Court has noted:

> The Fifth Circuit has not clarified the specific type of "medical documentation" necessary to establish the need for an assistive device. *Moore v. Saul*, No. 3:20-cv-48-DPJ-MTP, 2021 WL 909618, at *3 (S.D. Miss. Feb. 1, 2021), *R. & R. adopted by* 2021 WL 754833 (S.D. Miss. Feb. 26, 2021). But "several circuits have elaborated and expounded on what documentation is needed in order for a [p]laintiff to show medical necessity"—e.g., an "unambiguous opinion from a physician" describing when the device is medically necessary, or documentation "*establishing the need* for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." *Id.* (quoting *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012), and *Staples v. Astrue*, 329 F. App'x

189, 192 (10th Cir. 2009)). Ultimately, the ALJ "must always consider the particular facts of a case" in evaluating the effect a claimant's use of an assistive device has on her ability to work. SSR 96-9p, 1996 WL 374185, at *7.

*Maria U. v. Comm'r of Soc. Sec.*, No. 5:22-CV-299, 2023 WL 9789922, at *5 (N.D. Tex. Dec. 27, 2023) (Bryant, Jr., J), *adopted by* 2024 WL 729834 (N.D. Tex. Feb. 22, 2024).

"Neither a prescription for a hand-held assistive device, nor a lack thereof, is necessarily dispositive of medical necessity." *Duenes*, 578 F. Supp. 3d at 872 (citations omitted). Ultimately,

> [the ALJ] must always consider the particular facts of a case.  For example, if a medically required [walker] is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96–9p, 1996 WL 374185, at *7.

### B. Discussion

Here, the ALJ explains at the start of his post-remand Hearing Decision that, "[i]n its remand order, [the] Appeals Council directed the undersigned to consider whether the claimant had an impairment, or combination of impairments, that met or medically equaled a listed impairment, including whether there was a documented medical need for a walker." Doc. 12-1 at 20.

While the Commissioner accurately asserts that no medical provider prescribed Plaintiff's walker, *see* Doc. 20 at 4, Plaintiff is correct that the lack of a prescription for a walker is not "necessarily dispositive," *see* Doc. 15 at 17 (quoting *Bivens v. Saul*, No. 3:20-cv-1904-K-BH, 2022 WL 869687, at *10 (N.D. Tex. Mar. 7, 2022) (Ramirez, J.), *adopted by* 2022 WL 865903 (N.D. Tex. May 22, 2022).  Again, the regulations provide that the need for the use of a walker only be reflected in the RFC if "medical documentation establish[es] the need for [it]" and

"describ[es] the circumstances for which it is needed." SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996).

The Court notes that, here, in addition to Plaintiff's hearing testimony, multiple entries in the medical records document Plaintiff's use of a walker. *See, e.g.*, Doc. 12-2 at 916 (August 26, 2020); Doc. 12-2 at 125 (March 30, 2022); Doc. 12-3 at 141-42 (October 20, 2022); Doc. 12-3 at 89 (December 26, 2022). Still, mere observations of walker use do not render the assistance "medically necessary." *See Duenes*, 578 F. Supp. 3d at 872. And in this case, some of the providers in the record simply observed Plaintiff's walker use without commenting on its medical necessity. For example, physician's assistant Aaron Steven Ford observed that Plaintiff could "walk with a walker" upon noting Plaintiff's ankles were swollen and that Plaintiff showed "degenerative changes of hip and L spine." Doc. 12-2 at 196.

Nevertheless, some of Plaintiff's medical providers, though not specifically prescribing the use of a walker, describe the conditions supporting Plaintiff's need for an assistive device to ambulate.

For example, during a physical therapy evaluation in 2020, Plaintiff was assessed with mobility impairment, gait impairment, decreased upper and lower extremity strength, decreased activity tolerance, and movement impairment. Doc. 12-2 at 171. It was further noted that upon mobility testing, Plaintiff used a rolling walker and gait belt, and was noted to have an unsteady gait pattern, decreased gait speed, excessive upper extremity weight bearing, the need for verbal cueing for safety, and wide base of support. Doc. 12-2 at 171. Plaintiff also was only able to ambulate for five feet. Doc. 12-2 at 173. The report lists: "Mobility Assistive Device" as "Rolling Walker." Doc. 12-2 at 174.

Another example is documented in the notes of Dr. Bryan Thibodeau, M.D. Doc. 12-2 at 102-07. Upon examination in the emergency department on April 30, 2021, Dr. Thibodeau determined that Plaintiff was morbidly obese and suffering from "gouty arthritis" with bilateral extremity edema from ankle to toes, and some warmth and tenderness to the bilateral medial malleoli. Doc. 12-2 at 101-02. He also noted that after several attempts at pain control, Plaintiff still could not self-ambulate with crutch assistance and had fallen when attempting to do so and, therefore, could not safely be discharged. Doc. 12-2 at 104. And at the time of discharge, clinical impression included "ambulatory dysfunction." Doc. 12-2 at 106.

Dr. David Ukoha, M.D., noted on March 30, 2022, that Plaintiff's gait and station were assisted with a walker, and that Plaintiff's gait was very slow secondary to obesity. Doc. 12-2 at 127. Dr. Ukoha also noted Plaintiff had difficulty squatting, hopping, tandem walking, and toe walking. Doc. 12-2 at 128. Dr. Ukoha concluded that Plaintiff had reduced mobility with walker dependence. Doc. 12-2 at 128. Notably, when vacating the ALJ's 2023 decision, the Appeals Council indicated Dr. Ukoha's report as evidence supporting Plaintiff's need for a walker, *see* Doc. 12-1 at 145.

In his most recent decision, the ALJ found that Plaintiff "reported rather inconsistent information regarding his need and/or use of an assistive device," Doc. 12-1 at 29, holding:

> The record shows the claimant has been provided a walker for assistance with ambulation. However, there is no discussion from a doctor discussing the need to use a walker for balance. The claimant testified that August 2023 was when he was first prescribed a walker (Testimony). But there is no prescription found in the record at that time. Instead, the first note of a bariatric walker is not until December 2023. While the record references the claimant's use of a walker prior to December 2023 and that he even presented with a broken walker that needed to be replaced at one point, there is no prescription nor medical opinion in the record to support when the claimant would need to use a walker and why a walker is necessary. There is a note from the consultative examiner . . . on March 30, 2022, which states his gait

and station assisted with walker showed no ataxia, but the gait is very slow secondary to obesity. The report also states that "The examinee claims that before discharge from the hospital because of difficulty with ambulation he was prescribed a walker by the physician."  However, there is no such prescription nor analysis describing the necessity of a walker in the record.  At the hearing on July 15, 2024, the claimant controverted the medical evidence and stated he did not start using a walker until sometime in 2023 after funding was secured (Testimony). Yet, at the prior hearing the claimant testified that he has a walker and a doctor at Medical City Hospital prescribed the walker in 2021 (Testimony). However, again, there is no such evidence in the record. While it is apparent the claimant utilizes a walker, the undersigned finds insufficient medical evidence to support a finding of a need for the use of a walker according to the Social Security Act and Regulations.

Doc. 12-1 at 30 (administrative record citations omitted).[2]

That the ALJ obviously focused on the lack of prescription for a walker in the medical records—almost as though it were a requirement—lends credence to Plaintiff's argument that the ALJ's discussion of Plaintiff's need for a walker was overly selective. *See* Doc. 15 at 22-25.  The undersigned also finds it telling that while most of Plaintiff's medical providers and the medical consultants noted his use of a walker, not one of them suggested that his use was not necessary.

In sum, despite there being no documentary record of a prescription issued for a walker, the objective medical evidence establishes Plaintiff's need for a hand-held assistive device and describes the circumstances for which it is needed.  That is all that the regulations require.  *See* SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996).  Again, the lack of a prescription is not solely determinative.  *Duenes*, 578 F. Supp. 3d at 872.  Thus, the ALJ erred by failing to consider Plaintiff's walker use in determining the RFC.  *See Heather H. v. Kijakazi*, 2021 WL 4138406, at

---

[2] On review of the hearing transcript, in context and considering the objective reports of Plaintiff's walker use, it appeared Plaintiff was making a distinction between his use of a walker (presumably a roller walker) and a bariatric walker in his testimony.  *See e.g.*, Doc. 12-1 at 93-94

12

*8 (S.D. Tex. Sept. 10, 2021) (Palermo, J.) ("The ALJ errs when he ignores medical records documenting a plaintiff's need for an assistive device.").

### C. Harmless Error Analysis

Because "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party have been affected," Plaintiff must show he was prejudiced by the ALJ's failure to rely on medical opinion evidence in assessing his RFC.  *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam).  To establish prejudice, a plaintiff must show that the ALJ's failure to rely on a medical opinion as to the effects his impairments had on his ability to work casts doubt on the existence of substantial evidence supporting the ALJ's disability determination.  *McNair v. Comm'r of Soc. Sec. Admin.*, 537 F. Supp. 2d 823, 837 (N.D. Tex. 2008) (citing *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)).

Interestingly, in the instant case, the ALJ posed an alternative RFC hypothetical to the VE in the first administrative hearing that included the use of a walker, inquiring, "what about any impact of a rolling walker for ambulation, is there any impact on the jobs and the numbers that you provided or [sic]?  Doc. 12-1 at 84.  The VE responded, "No, Your Honor, I believe that at the sedentary [sic] you can use the walker to come in and sit at your office and sit at your desk and complete the work."  Doc. 12-1 at 84.

However, at the second hearing, the ALJ's inquiry was more limited and the VE's response was different.  The ALJ asked the VE, "Would there be any impact on those jobs [previously identified by the VE as available] or those numbers if the individual was going to require a walker for ambulation?"  Doc. 12-1 at 102.  The VE responded, "Yes, a walker would

have to be an accommodation because of the work environment there's no, you know, guarantee that the aisles would be – you know, wide enough or that the workstation, you know, would be able to accommodate a walker." *See* Doc. 12-1 at 101-03. Rather than following up to clarify the necessary accommodations and the impact, if any, of the required use of a walker on the number of jobs available to someone with Plaintiff's RFC in the national economy, the ALJ explicitly abandoned the walker-use hypothetical. *See* Doc. 12-1 at 102-03. Thus, the record is unclear whether the Commissioner met the step five burden to prove Plaintiff's employability. *See* 20 C.F.R. § 404.1520(a)(4).

Considering the Court's finding herein that the substantial evidence supports that Plaintiff's walker use was medically necessary, the Court concludes that the ALJ's hypothetical questions to the VE failed to adequately incorporate all relevant limitations. *See Morrison v. Kijakazi*, 2024 WL 1893604, at *5 (S.D. Tex. Apr. 30, 2024) ("'A defective hypothetical is reversible error' and a claimant need not show prejudice.") (quoting *Wilson v. Kijakazi*, 2021 WL 3269762, at *3 (S.D. Tex. July 30, 2021)). That notwithstanding, for the foregoing reasons, remand is warranted because "it is conceivable that the ALJ could make a different administrative decision upon further review." *Shugart v. Kijakazi*, No. 3:21-CV-07, 2022 WL 912777, at *4 (S.D. Tex. Mar. 29, 2022) (Edison, J.); *see also Davidson v. Colvin*, 164 F. Supp. 3d 926, 944 (N.D. Tex. 2015) (Ramirez, J.) (same).

Because in the case *sub judice* the ALJ's error was not harmless, remand is warranted.

14

## IV. CONCLUSION

In sum, the Court finds that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision should be **REVERSED** and **REMANDED** for further proceedings.

**SO ORDERED** on March 6, 2026.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).